<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **DONALD P. MILIONE, D.C.**, <br><br> Plaintiff, <br><br> v. <br><br> **UNITED HEALTHCARE,** *et al.*, <br><br> Defendants. | Civil Action No. 23-1743 (ZNQ) (RLS) <br><br> **OPINION** |

<u>**QURAISHI, District Judge**</u>

  **THIS MATTER** comes before the Court upon a Motion to Dismiss ("Motion", ECF No. 15) filed by Defendants United Healthcare ("UHC") and OptumHealth Care Solutions, LLC ("Optum") (together, "Defendants"). The Motion seeks to dismiss only the First Claim for Relief sought by the Complaint, which is the sole claim against these defendants. In support of their Motion, Defendants filed a Moving Brief. ("Moving Br.", ECF No. 15-2.) Plaintiff Dr. Donald Milione, D.C. ("Plaintiff" or "Milione") opposed ("Opp'n", ECF No. 17) and Defendants replied ("Reply", ECF No. 18). Having reviewed the parties' submissions filed in connection with the Motions and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b) and Local Civil Rule 78.1, for the reasons set forth below and for good cause appearing, the Court will **GRANT** Defendants' Motion to Dismiss. Plaintiff's First Claim for Relief will be dismissed without prejudice.

I.      **BACKGROUND AND PROCEDURAL HISTORY**[1]

Defendant UHC is a provider of insurance products, including health insurance plans and policies, within the State of New Jersey. (*See* Compl. ¶¶ 1, 3.) Defendant Optum is a "company that performs reviews on behalf of Oxford and UHC health plans and reviews appeals related to benefit determinations under the UHC health plans, within the State of New Jersey." (*Id.* ¶ 2.) Plaintiff Dr. Milione provides chiropractic services to patients in New York, New Jersey, and Connecticut. (*See id.* ¶ 5.) He is out-of-network with UHC and "does not have a contract setting the rates of reimbursement with any of the moving Defendants." (Moving Br. at 2; *see generally* Reply.)[2] Only Plaintiff's First Claim for Relief, against Defendants UHC and Optum, is at issue in the instant Motion.[3] Plaintiff brings claims under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.* (*see id.* ¶ 15), and also purports to bring various patient claims to the extent that the applicable health plans are not covered by ERISA. (*See id.* ¶ 16).

Plaintiff provided services to six (6) patients—Eva N, Shanna M, Emmanuella C, Gee Hyun K, Hayde M, and Raymond VN (together, "Patients") (*see id.* ¶¶ 103–112)—between September 2019 and October 2021. (*Id.* ¶¶ 21, 41, 61, 71, 81, 91.) At the time of service, patients Eva N, Emmanuella C, Gee Hyun K, Hayde M, and Raymond VN, were covered by insurance policies/plans sold by UHC. (*See id.* ¶¶ 5, 9–12.) Shanna M was covered by an insurance policy/plan sold by UHC and administered by Optum. (*See id.* ¶ 7.) When Patients began their

---

[1] This background section is gleaned from the Complaint. For the purposes of this Motion, the Court assumes as true its well-pled facts. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1412 (3d Cir. 1997).

[2] Plaintiff does not dispute these assertions by Defendants as to his out-of-network status and the absence of a contract with Defendants setting rates of reimbursement. (*See generally* Compl.; Opp'n.)

[3] Because the instant Motion was filed by only two (2) of the Defendants—UHC and Optum—the Court recites only factual background necessary to resolve the instant Motion as it pertains to these defendants. The Court does not address any of Plaintiff's claims against Cigna Health and Life Insurance Company outlined in the Second Claim for Relief.

medical care with Plaintiff, they all signed an assignment of benefits ("Assignment"), which read, in part, as follows:

> I hereby assign all applicable health insurance benefits to which I and/or my dependents are entitle [sic] to Provider [defined as Milione]. . . I hereby authorize Provider to submit claims, on my and/or my dependent's behalf, to the benefit plan (or its administrator) listed on the current insurance card I provided to Provider, in good faith. I also hereby instruct my benefit plan (or its administrator) to pay Provider directly for services rendered to me or my dependents. To the extent that my current policy prohibits direct payment to Provider, I hereby instruct and direct my benefit plan (or its administrator) to provide documentation stating such non-assignment to myself and Provider upon request. Upon proof of such non-assignment, I instruct my benefit plan (or its administrator) to make out the check to me and mail it directly to Provider.

(*Id.* ¶¶ 24, 44, 64, 74, 84, 94.)  In addition, Patients signed an authorization allowing Plaintiff to act as their "'Authorized Representative' in connection with any 'claim, right, or cause in action that [he/she] might have under such insurance policy and/or benefit plan' and the right to 'pursue such claim, right or cause of action in connection with said insurance policy and/or benefit plan.'" (*Id.* ¶¶ 25, 45, 65, 75, 85, 95.)  Plaintiff subsequently performed the relevant services including "Nerve Conduction Studies."  (*Id.* ¶¶ 17, 21, 41, 61, 71, 81, 91.)  Plaintiff submitted claims for these services to UHC, along with Patient medical records and other supporting documents.  (*Id.* ¶¶ 26, 46, 66, 76, 86, 96.)  However, UHC "repeatedly denied or underpaid" the claims, informing Plaintiff "that the medical records were not received or were not sufficient to support the medical necessity of the procedures."  (*Id.* ¶¶ 17, 26, 46, 66, 76, 86, 96.)  After UHCs denial, Plaintiff (on behalf of Patients) went through the "entire available appeal process."  (*Id.* ¶¶ 29, 49, 69, 79, 89, 99.)  However, his appeals were denied and UHC did not (and has not) paid any of the claims. (*Id.*)

According to Plaintiff, Defendants' benefits determinations were not only erroneous and "improper[ ]," but were also "violat[ions] of their duties as ERISA fiduciaries." (*Id.* ¶¶ 18, 105.) Moreover, Defendants "routinely ignored relevant information submitted by Milione during the claims process and refused to properly consider the appeals filed by [Plaintiff] on behalf of his patients." (*Id.* ¶ 17.) As alleged, Defendants "have failed to act prudently and in the interests of Milione's patients, the plan beneficiaries, have failed to follow written plan documents, and have failed to decide the claims under a full and fair claims procedure as set forth in ERISA's claims regulations. . . . 29 U.S.C. §§ 1104, 1133; 29 C.F.R. § 2560.503-1." (*Id.* ¶ 19.) Finally, the Complaint alleges that the positions taken by UHC in denying or underpaying the claims "were not only contrary to the plan documents, but they were also contrary to the positions that UHC had already taken on multiple occasions during the plan year and in prior plan years at which time UHC had paid the appropriate amounts for the procedures and requested benefits." (*Id.* ¶ 107.)

Plaintiff seeks payment from UHC[4] of $62,691.78 in underpaid or unpaid benefits he alleges are due to the Patients[5] "under the . . . assignments he received prior to providing services" (*see id.* ¶ 20), attorneys' fees and costs under ERISA (29 U.S.C § 1132(g)(1)) (*see id.* ¶ 112), and "a declaration that UHC was and is required to pay for the various procedures at issue[.]" (*Id.* ¶ 112(b).)

---

[4] The title for the First Claim for Relief states that it seeks relief from both UHC and Optum, but none of its numbered paragraphs mention Optum. (*See* Compl. ¶ 103–112.) Optum is instead mentioned, apparently in error, in the Second Claim for Relief along with non-party "Oxford." (Compl. ¶ 122(b) (seeking a "declaration that Optum/Oxford was and is required to pay for the required nerve studies and related procedures").)

[5] Also in his First Claim for Relief, Plaintiff names two patients, "Pelster and Wang," who are not previously mentioned in the Complaint. The Court assumes that Plaintiff intended to name the Patients previously identified in the Complaint for whom he performed services. (Compl. ¶ 112(a).)

4

## II.     LEGAL STANDARD

1. <u>Rule 12(b)(1)</u>

Under Rule 12(b)(1), "a court must grant a motion to dismiss if it lacks subject-matter jurisdiction to hear a claim." *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012). Standing under Article III of the United States Constitution is an element of subject matter jurisdiction. *See Hartig Drug Co. Inc. v. Senju Pharm. Co.*, 836 F.3d 261, 269 (3d Cir. 2016). "A motion to dismiss for want of standing is . . . properly brought pursuant to Rule 12(b)(1), because standing is a jurisdictional matter." *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007).

When considering a Rule 12(b)(1) standing challenge, the Court must determine whether the attack is facial or factual. *Schering Plough*, 678 F.3d at 243. "A facial attack, as the adjective indicates, is an argument that considers a claim on its face and asserts that it is insufficient to invoke the subject matter jurisdiction of the court because . . . it does not present a question of federal law, or because . . . some other jurisdictional defect is present." *Const. Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014). If the defendant challenges jurisdiction in its Rule 12(b)(1) motion before answering the complaint or "otherwise present[ing] competing facts," the Rule 12(b)(1) motion is, "by definition, a facial attack." *Const. Party of Pa.*, 757 F.3d at 358 (citing *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 892 n.17 (3d Cir. 1977)).

When analyzing a facial attack on subject-matter jurisdiction, "the court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." *Schering Plough*, 678 F.3d at 243 (quoting *Gould Elecs. Inc., v. United States*, 220 F.3d 169, 176 (3d Cir. 2000)). "The person asserting jurisdiction bears the burden of showing that the case is properly before the court at all stages of the litigation." *Packard*

*v. Provident Nat'l Bank*, 994 F.2d 1039, 1045 (3d Cir. 1993) (citing *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936)). However, a facial challenge, "which attacks the complaint on its face without contesting its alleged facts, is like a 12(b)(6) motion in requiring the court to 'consider the allegations of the complaint as true.'" *Hartig*, 836 F.3d at 268 (citation omitted); *accord Mortensen*, 549 F.2d at 891.

Factual attacks, in contrast, argue that subject matter jurisdiction is improper "because the facts of the case . . . do not support the asserted jurisdiction." *Const. Party of Pa.*, 757 F.3d at 358. The presumption of truth does not extend to factual attacks, "and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Mortensen*, 549 F.2d at 891. Courts are permitted, however, to weigh and consider facts "outside the pleadings" to decide whether subject matter jurisdiction is proper. *Const. Party of Pa.*, 757 F.3d at 358.

2. Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) provides that a court may dismiss a claim "for failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). On a motion to dismiss for failure to state a claim, the moving party "bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

District courts undertake a three-part analysis when considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). *See Malleus v. George,* 641 F.3d 560,563 (3d Cir. 2011). "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* (alteration in original) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 675 (2009)). Second, the court must accept as true all of the plaintiff's well-pled factual allegations and "construe the

complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quotation omitted). In doing so, the court is free to ignore legal conclusions or factually unsupported accusations that merely state, "the-defendant-unlawfully-harmed-me." *Iqbal,* 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "[M]ere restatements of the elements of [a] claim[ ] . . . are not entitled to the assumption of truth." *Burtch v. Milberg Factors, Inc.,* 662 F.3d 212, 224 (3d Cir. 2011) (alterations in original) (quotation omitted). Finally, the court must determine whether "the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler,* 578 F.3d at 211 (quoting *Iqbal,* 556 U.S. at 679). A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 678). "The defendant bears the burden of showing that no claim has been presented." *Hedges v. United States,* 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

Federal Rule of Civil Procedure 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Twombly*, 550 U.S. at 555 (alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While Rule 8(a)(2) does not require that a complaint contain detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

### III. DISCUSSION

#### A. PLAINTIFF'S CLAIMS FAIL FOR LACK OF STANDING AS TO THE PLANS CONTAINING ANTI-ASSIGNMENT PROVISIONS

There are three well-recognized elements of Article III standing. Defendants, although they do not say so explicitly, appear to dispute the element of "injury in fact" or "invasion of a legally protected interest" that is "concrete and particularized." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Here, the Motion argues that, accepting the Complaint on its face, Plaintiff fails to allege an injury to himself. (*See generally* Moving Br.)

In the context of a motion to dismiss, the injury-in-fact element is "not Mount Everest." *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 278 (3d Cir. 2014). The contours of the injury-in-fact element require only that the claimant allege some specific, "identifiable trifle of injury." *Id.* "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice." *Lujan*, 504 U.S. at 561 (citation and internal quotation marks omitted). To plead an injury in fact, the party invoking federal jurisdiction (here, Plaintiff) must establish three sub-elements: first, the invasion of a legally protected interest; second, that the injury is both "concrete and particularized"; and third, that the injury is "actual or imminent, not conjectural or hypothetical." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (quoting *Lujan*, 504 U.S. at 560); *see also Mielo v. Steak 'n Shake Ops.*, 897 F.3d 467, 479 n.11 (3d Cir. 2018). The injury-in-fact test "requires that the party seeking review be himself among the injured." *Lujan*, 504 U.S. at 563 (citing *Sierra Club v. Morton*, 405 U.S. 727, 734–35 (1972)). Because Defendants' Motion constitutes a facial challenge to standing, the Court will take the facts in the Complaint as true and construe them in the light most favorable to Plaintiff. *See Hartig*, 836 F.3d at 268; *Schering Plough*, 678 F.3d at 243.

For the reasons set forth below, the Court finds that Plaintiff lacks standing to bring claims on behalf of four of the six patients: Emmanuella C, Raymond VN, Hayde M, and Eva N.

1. <u>Anti-assignment and Limitation-on-assignment Clauses are Enforceable</u>

"[A]nti-assignment clauses in ERISA-governed health insurance plans as a general matter are enforceable." *Am. Orthopedic & Sports Med. V. Independence Blue Cross Blue Shield*, 890 F.3d 445, 453 (3d Cir. 2018). As such, "where the participant's plan contains an unambiguous anti-assignment provision, providers are precluded from derivative standing[.]" *Abramson v. Aetna Life Ins. Co.*, Civ. No. 22-05092, 2023 WL 3199198, at *5 (D.N.J. May 2, 2023) (citing *Am. Orthopedic & Sports Med.*, 890 F.3d at 453); *E. Coast Aesthetic Surgery, P.C. v. UnitedHealthcare*, Civ. No. 17-13595, 2018 WL 3201798, at *2–3 (D.N.J. June 29, 2018) (holding that plan provision requiring "consent" to assignment was a valid and enforceable anti-assignment provision and deprived Plaintiff of ERISA standing).

Plaintiff concedes that he "does not dispute that generally, anti-assignment provisions are enforceable." (Opp'n at 4.) Nor does he challenge the anti-assignment provisions themselves. Plaintiff only argues that he was unaware of the anti-assignment and limitation-on-assignment provisions in the applicable plans at the time of filing his Complaint. (*See* Opp'n at 4.) He asserts that the Motion to Dismiss is the first time Defendants have raised the anti-assignment issue "despite repeated requests by plaintiffs regarding the coverage available under the plans and the existence of anti-assignment provisions[.]" (*Id.*) In ambiguous language presented in his Opposition, Plaintiff appears to either (or simultaneously) ask the Court to deny this part of Defendants' Motion because Defendants failed to timely raise their anti-assignment argument and/or to seek leave to amend the Complaint to raise waiver/estoppel claims. (*See* Opp'n at 4–5.) As to the latter, the Court will address, *infra*, whether Plaintiff's claims will be dismissed with or without prejudice and whether Plaintiff will be given leave to amend the complaint. As to the

9

former, defendant-insurers are generally not deemed to have waived anti-assignment clauses based on their failure to raise them prior to suit. *See Am. Orthopedic & Sports Med. v. Independence Blue Cross Blue Shield*, 890 F.3d 445, 453–54 (3d Cir. 2018) (holding that insurers did not waive their right to enforce anti-assignment clause when the plaintiff claimed insurers had underpaid his claim and insurers "failed to raise the anti-assignment clause as an affirmative defense" during the internal administrative appeals process); *Deerhurst Estates v. Meadow Homes, Inc.*, 64 N.J. Super. 134, 145, 165 A.2d 543, 549 (App. Div. 1960), *certif. denied*, 34 N.J. 66, 167 A.2d 55 (N.J. 1961) (stating that waiver requires a "voluntary, clear and decisive act, implying an election to forego some advantage which the waiving party might have insisted on"); *IGEA Brain & Spine, P.A. v. Blue Cross & Blue Shield of Minn.*, Civ. No. 16–5844, 2017 WL 1968387, at *1–2 (D.N.J. May 12, 2017) ("Simply engaging in a claim review process with Plaintiff does not demonstrate a 'clear and decisive act' to waive the Plan's anti-assignment provisions and confer upon Plaintiff standing to sue."). Accordingly, the Court will not preclude Defendants from raising this issue as part of their Motion.

> 2. <u>The Anti-assignment and Limitation-on-assignment Clauses in the Plans Covering Emmanuella C, Raymond VN, Hayde M, and Eva N Preclude Plaintiff from Derivative Standing on Behalf of those Patients</u>

To the extent there does exist a dispute between the parties, the Court finds that the anti-assignment and limitation-on-assignment language in the applicable plans covering four of Plaintiffs' patients precludes Plaintiff from derivative standing on behalf of those patients. According to Defendants, the policy under which Emmanuella C was covered for dates of service from February 17, 2021 to September 24, 2021 (*see* Compl. ¶ 61) contained prohibitions or limitations on assignment. The plan's explicit anti-assignment language reads:

> You may only assign the right for a Provider to receive Benefits directly from the Medical Plan, except as applicable law may otherwise require; all other assignments are void. Accordingly, you

10

> *may not assign the right*: to receive Benefits directly to a Provider under the Prescription Drug Plan, *to sue for Benefits under either of the Plans in local, state or federal court or to sue the Plans, the Plan Administrator, the Plan Sponsor, the Benefits Administrator or either of the Claims Administrators for any other statutory or Plan right or obligation under local, state or federal law*. Assignees are not authorized representatives or beneficiaries under the terms of the Plans.

(Declaration of Jane Stalinski, "Stalinski Decl.", ECF No. 15-3 ¶ 3, Ex. 2 at 60; Moving Br. at 4) (emphases added).[6]

As to the plan covering Raymond VN for dates of service between March 9, 2020 and October 27, 2021 (*see* Compl. ¶ 91), the limitation-on-assignment language reads:

> To be recognized as a valid assignment of Benefits under the Plan, the assignment *must reflect the Covered Person's agreement that the non-Network provider will be entitled to all the Covered Person's rights under the Plan and applicable state and federal laws, including legally required notices and procedural reviews concerning the Covered Person's Benefits, and that the Covered Person will no longer be entitled to those rights*. If an assignment form does not comply with this requirement, but directs that your benefit payment should be made directly to the provider, [UHC] may in its discretion make payment of the benefits directly to the provider for your convenience, but will treat you, rather than the provider, as the beneficiary of your claim.

(Stalinski Decl. ¶ 5, Ex. 4 at 103, Ex. 5 at 96; Moving Br. at 5) (emphases added).

The plan covering patient Hayde M for the dates of service on December 20, 2019, and December 23, 2019[7] (*see* Compl. ¶ 81) contains the following anti-assignment provision: "You

---

[6] The Court agrees with Defendants (*see* Moving Br. at 7) that because the plan documents attached to the Certification of Jane Stalinski are "integral or explicitly relied upon" in the Complaint, the plans "may be considered without converting the motion to dismiss into one for summary judgment." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1426 (clarifying that "what is critical is whether the claims in the complaint are 'based' on an extrinsic document and not merely whether the extrinsic document was explicitly cited"); *see also In re Donald J. Trump Casino Sec. Litig.*, 7 F.3d 357, 368 n. 9 (3d Cir. 1993) ("[A] court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.")

[7] Plaintiff also brings claims on behalf of Hayde M for the dates of service of January 9, 2020, and July 27, 2020. Defendants claim Hayde M was covered under the same plan in both 2019 and 2020 (Stalinski Decl. ¶ 6), but only include language from the applicable plan for 2019. (Stalinski Decl. Ex. Ex. 6 at 119; Moving Br. at 6.)

may not assign your Benefits under the Plan to an Out-of-Network provider without [UHC's] consent." (Stalinski Decl. ¶ 6, Ex. 6 at 119; Moving Br. at 6.)

The plan covering patient Eva N[8] for dates of service between September 21, 2020 and September 24, 2020 (*see* Compl. ¶ 21) contains the following anti-assignment language:

> Unless otherwise required by applicable law or expressly permitted by the Reserve Bank Committee on Plan Administration (in its discretion), benefits provided under the Health Benefits Program *may not be pledged, assigned, transferred or sold. In other words, you cannot assign your right to receive health benefits to a health care provider or any other person. Any attempt to do so will be void.*

(Stalinski Decl. ¶ 2, Ex. 1 at 148; Moving Br. at 5–6) (emphasis added).

Here, the plans covering Emmanuella C and Hayde M clearly and unambiguously prohibit assignments.[9] Even though Emmanuella C's plan allows a provider to "receive Benefits directly from the Medical Plan" (Stalinski Decl. ¶ 3, Ex. 2 at 60), "[c]ourts repeatedly enforce anti-assignment clauses regardless of whether there are also clauses permitting direct payments to providers." *Atl. Shore Surgical Associates v. United Healthcare Ins. Co.*, Civ. No. 20-03065, 2021 WL 2411373, at *6 (D.N.J. June 14, 2021) (collecting cases). Therefore, Plaintiff does not have standing to pursue claims on behalf of either Emmanuella C or Hayde M.

---

[8] Defendants assert that "One of the plans is not governed by ERISA and, therefore, provides an independent basis for dismissal since Milione only asserts claims under ERISA." (Moving Br. at 1 n.2.) However, later in their Moving Brief, Defendants also appear to allege that *both* Eva N and Hayde M's plans were "governmental plans" that appear in UHC's records as "not governed by ERISA." (*Id.* at 3, 5–6; Stalinski Decl. ¶¶ 2, 6.) Nonetheless, Defendants later include Hayde M in the section discussing ERISA-governed plans. (*See id.* at 11.) From this information, it is unclear whether Defendant intended to assert that *both* Eva N and Hayde M's plans were not governed by ERISA, or that just one of those plans was not governed by ERISA. Defendants also note that they have "independently confirmed that the plans covering [Emmanuella C], [Gee Hyun K], and [Raymond VN] are governed by ERISA" (*id.* at 2), but that they have "not been able to independently confirm whether the plan for [Hayde M] related to service dates in 2020 and the plan for [Shanna M] are governed by ERISA . . . ." (*Id.* at 3 n.4.) At this juncture, the Court does not decide whether any of the applicable plans were covered by ERISA because regardless of whether they are governed by ERISA, the non-assignment provisions in these plans preclude standing/subject matter jurisdiction under Rule 12(b)(1).

[9] Even if the plan under which Eva N was covered during 2019 and 2020 was governed by ERISA (as described *supra*, this is unclear from the pleadings), that plan contains a clear and unambiguous prohibition on assignment that would preclude Plaintiff from standing.

As to the plan covering Raymond VN, Plaintiff argues that the full assignment satisfies the conditions for a valid assignment imposed by the plan's language. (Opp'n at 3.) Plaintiff does not, however, quote the applicable language from the assignment in his Complaint and instead excerpts a different portion of the assignment. (*See,* Compl. ¶ 94.) Plaintiff attempts to remedy this defect by attaching the full assignment and his own declaration to his Opposition. (ECF Nos. 17-1; 17-2 Ex. A.) Unfortunately for Plaintiff, this constitutes an "improper attempt to amend the Complaint" (Reply at 2) in his Opposition. *See Frederico v. Home Depot*, 507 F.3d 188, 201–02 (3d Cir. 2007) (noting, in the parallel context of a Rule 12(b)(6) motion, that "we do not consider after-the-fact allegations in determining the sufficiency of [a] complaint"). If Plaintiff wishes the Court to consider the full assignment, he must amend his Complaint, pointing Defendants to the applicable language that allegedly satisfies the conditions for a valid assignment. Given that this is a facial challenge to standing under Rule 12(b)(1), the Court must consider *only* the allegations in the Complaint, and the Court finds that Plaintiff has not properly alleged standing as to Raymond VN. *Id.*; *Schering Plough*, 678 F.3d at 243.

In sum, Plaintiff provides only conclusory allegations that the Defendants' actions harmed him and his patients. The Complaint fails to allege any injury to Plaintiff. *See Lujan*, 504 U.S. at 563 (explaining that the injury-in-fact test "requires that the party seeking review be himself among the injured"). As such, even considering the Complaint in the light most favorable to Plaintiff, the Court concludes Plaintiff has failed to identify a particularized injury-in-fact. Accordingly, the Court has no subject-matter jurisdiction because Plaintiff lacks standing. *See Schering Plough*, 678 F.3d at 243.

### B. PLAINTIFF FAILS TO STATE A CLAIM UNDER RULE 12(B)(6) AS TO THE REMAINING PLANS

As to the remaining two patients covered by UHC, Shanna M and Gee Hyun K, Plaintiff does not state a plausible cause of action under ERISA.[10] Under ERISA § 502, codified at 29 U.S.C § 1132, a "participant" or "beneficiary" may bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B); *see also Univ. Spine Ctr. v. Cigna Health & Life Ins. Co.*, Civ. No. 17-13596, 2018 WL 4144684, at *3 (D.N.J. Aug. 29, 2018). To state a claim under ERISA § 502(a)(1)(B), Plaintiff "'must demonstrate that the benefits are actually 'due'; that is, he or she must have a right to benefits that is legally enforceable against the plan.'" *Atl. Plastic & Hand Surg., P.A. v. Anthem Blue Cross Life & Health Ins. Co.*, Civ. No. 17-4600, 2018 WL 1420496, at *10 (D.N.J. Mar. 22, 2018) (quoting *Hooven v. Exxon Mobil Corp.*, 465 F.3d 566, 574 (3d Cir. 2006)).

As Defendants note, the Complaint "fails to cite a single provision from *any* of the ERISA-governed Plans supporting Milione's claims or otherwise requiring reimbursement at Milione's claimed amount." (Moving Br. at 13) (emphasis in original). Plaintiff fails "'to identify—or allege the existence of—any provision in the Plan[s] requiring [UHC] to pay for out-of-network services in accordance [with the plaintiff's claimed rate]." *Univ. Spine Ctr.*, 2018 WL 4144684, at *3 (quoting *Atl. Plastic & Hand Surg., P.A.*, 2018 WL 1420496, at *10); *see also Emergency Physicians of St. Clare's, LLC v. Horizon Blue Cross Blue Shield of N.J.*, Civ. No. 19-12112, 2020

---

[10] Plaintiff does not specify which state law claims he might have intended to bring, but alludes to possible claims for breach of contract in his Complaint. (Compl. ¶¶ 16, 18, 101.) However, he does not cite any provisions of the policies or contracts, that he claims Defendants allegedly breached. Therefore, the Court "cannot draw a reasonable inference of liability for breach of contract." *Grande Village LLC v. CIBC Inc.*, Civ. No. 14-3495, 2015 WL 1004236, at *5 (D.N.J. Mar. 6, 2015); *see also Eprotec Preservation, Inc. v. Engineered Materials, Inc., Civ.* No. 10-5097, 2011 WL 867542, at *8 (D.N.J. Mar. 9, 2011) ("Failure to allege the specific provisions of contracts breached is grounds for dismissal.").

WL 2079286, at *4 (D.N.J. Apr. 30, 2020) ("The Complaint does not . . . identify specific terms of the plans that were violated by Defendants.  Accordingly, the Complaint fails to properly state an ERISA claim.").

Plaintiff's only support for his conclusion that Defendants' denials and underpayments of his Patients' claims were "erroneous" and "improper" (Compl. ¶¶ 18, 105) is that he provided allegedly covered services to Patients, that Defendants denied coverage (*see id.* ¶¶ 103–112), and that UHC's denials were contrary to positions UHC had taken "on multiple occasions during the plan year and in prior plan years at which time UHC had paid the appropriate amounts for the procedures and requested benefits." (*Id.* ¶ 107.)

Courts have denied claims that fail, as here, to support with specific plan language their claims that "as non-participating providers, they 'are entitled to be reimbursed at usual, customary and reasonable . . . rates.'" *Somerset Orthopedic Assocs., P.A. v. Horizon Healthcare Servs., Inc.*, Civ. No. 19-8783, 2020 WL 1983693, at *8 (D.N.J. Apr. 27, 2020). Based on the Court's review of the Complaint, it finds that Plaintiff fails to identify the plan provisions requiring Defendants to pay *these* particular claims according to the terms, conditions, and limitations of the applicable plan.[11]  *See Univ. Spine Ctr.*, 2018 WL 4144684, at *3.

In sum, even construing the Complaint in the light most favorable to Plaintiff, the Court finds that Plaintiff fails to plead a plausible claim for ERISA benefits as to Shanna M and Gee

---

[11] Portions of the Complaint resort to asserting mere legal conclusions that Defendants "improperly denied or underpaid" his out-of-network claims. (Compl. ¶¶ 5, 7, 9, 10, 11, 12, 28, 29, 48, 49, 68, 69, 78, 79, 88, 89, 98, 99.) It alleges that Defendants' purported underpayments and denials of benefits are "erroneous," "improper," and "violat[ions] of their duties as ERISA fiduciaries"[11] (Compl. ¶¶ 18, 105), that the allegedly denied benefits were "medically necessary" (*id.* ¶ 17) and "covered" under the applicable policies (Compl. ¶¶ 5, 7, 9–12), that Defendants "routinely ignored" and "refused to properly consider" relevant information submitted by Plaintiff in making their benefits determinations (*id.* ¶ 17), that Defendants did not engage in a "full and fair claims procedure" under ERISA (*id.* ¶ 19), and that the denials and underpayments were "contrary to the plan documents." (*Id.* ¶ 107; *see also id.* ¶ 19).  These are legal conclusions that the Court is not required to accept as true. *Iqbal,* 556 U.S. at 678.

15

Hyun K. *Twombly*, 550 U.S. at 555.[12]  Accordingly, the Court will dismiss these claims without prejudice.

      **C.**     **STATE LAW CLAIMS**

Finally, although the Complaint makes oblique references to state law (Compl. ¶¶ 16, 101), the First Cause of Action does not appear to actually assert any claims under state law (Compl. ¶ 112) (citing only ERISA statute and demanding relief only "under ERISA").  Accordingly, the Court does not consider claims beyond those actually alleged under ERISA.

**IV.**    **CONCLUSION**

For the reasons stated above, the Court will **GRANT** Defendants' Motion to Dismiss. Plaintiff's First Claim for Relief will be dismissed without prejudice.  Plaintiff will be granted leave to amend within 30 days.  An appropriate Order will follow.

Date: **April 26, 2024**

                                                                s/ Zahid N. Quraishi
                                                                **ZAHID N. QURAISHI**
                                                                **UNITED STATES DISTRICT JUDGE**

---

[12] Similarly, the Court notes that Plaintiff's Opposition does not advance any legal arguments to support the plausibility of his claims.  *Fowler,* 578 F.3d at 211; *Iqbal,* 556 U.S. at 679.  Plaintiff simply re-asserts the conclusion from his Complaint that UHC "improper[ly] refus[ed] to pay for services that were paid before" (Opp'n at 5) and that the services he provided were "indisputably covered" by the applicable policies (*id.* at 7), without further elaboration or support.